## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

_____
                                          :
JOHN DOE,                                 :        CIVIL CASE NO.
                                          :        3:16-cv-01380-AWT
        Plaintiff,                        :
                                          :
v.                                        :
                                          :
YALE UNIVERSITY,                          :        AUGUST 17, 2018
                                          :
        Defendant.                        :
_____:

### MEMORANDUM OF LAW IN SUPPORT OF YALE'S MOTION FOR ORDER REQUIRING PLAINTIFF TO PROCEED UNDER HIS REAL NAME

Yale submits this memorandum of law in support of its Motion for Order Requiring Plaintiff to Proceed Under his Real Name.

## I.     BACKGROUND

When the Court permitted Plaintiff the extraordinary protection of proceeding under a fictitious name, it was not aware that Plaintiff had (1) been reckless about protecting his identity and disclosed confidential information including the names of the female students referred to in this lawsuit as Jane Doe and Sally Roe and (2) publicized this lawsuit to at least three news media outlets for the purpose of generating spin about his case and prejudicing Yale. This new information should cause the Court to disqualify Plaintiff from the protection of anonymity.

Plaintiff graduated from Yale in 2015. As a Yale student, Plaintiff was involved with three Title IX issues that form the basis of his claims in this lawsuit. First, in 2013, a Teaching Fellow ("TF") in his philosophy class raised concerns that Plaintiff told a joke about the sex lives of the professors in the department, used rape as an ill-conceived example in a paper, and exhibited odd behaviors. (See Ex. A (Title IX Incident Summary Form), pp. 1–2; Ex. B (TF's

email to Plaintiff's Professor), pp. 2–3.)[1]  This informal incident concluded with no discipline to Plaintiff.  (Ex. A, p. 2.)

Second, in 2014, Jane Doe, a female Yale student, alleged that Plaintiff had non-consensual sexual intercourse with her, which resulted in a proceeding before Yale's University-Wide Committee on Sexual Misconduct ("UWC").  (See Ex. C (Excerpt from Plaintiff's UWC Statement in the Jane Doe Case), p. 1.)  This ended with a finding against Plaintiff, and he was placed on probation.  (Ex. D (Dean Miller's decision in the Jane Doe Case), p. 1.)

Third, in 2015, Sally Roe, another female student, alleged that Plaintiff had engaged in non-consensual sexual contact with her, resulting in another UWC proceeding.  This ended with no finding against Plaintiff.  (See Ex. E (Panel Report in the Sally Roe Case), pp. 1, 6.)

During discovery, Yale learned that, from the very start of his involvement with the UWC, Plaintiff has freely disclosed documents and information – including the identities of Jane Doe and Sally Roe – in violation of Yale's rules regarding the confidentiality of UWC proceedings.  Although Plaintiff has insisted that the Court protect his confidentiality in this public litigation, he has not hesitated to disregard Yale's reasonable confidentiality rules, which are intended to protect the integrity of its processes and the privacy of those participating in them.[2]

On October 12, 2016, U.S. Magistrate Judge Sarah A.L. Merriam granted Plaintiff's motion to proceed in this action under the pseudonym "John Doe."  (Doc. No. 10.)  However, Judge Merriam was not aware of Plaintiff's behavior, and her order noted that Yale could revisit

---

[1] Exhibits submitted in support of Yale's motion are catalogued in the attached List of Exhibits.

[2] Plaintiff's disclosures included disseminating core documents that describe in detail the incidents underlying both UWC proceedings and identify Plaintiff, Jane Doe, and Sally Roe by name, and providing information to numerous unauthorized individuals both inside and outside of the Yale community.  See Ex. F (Excerpts from Plaintiff's Deposition Testimony), Tr. 187:1-20, 120:15-18, 186:15–187:5 (admitting to breaching confidentiality); Ex. G (Excerpts of Plaintiff's Communications with Other Yale Students), pp. 1–8; Ex. H (Excerpts of Plaintiff's Communications with K.J), pp. 2, 13; Ex. I (Excerpts of Plaintiff's Communications with E.M and Others), pp. 1, 4, 5, 12, 16, 18.  See also Ex. J (UWC Confidentiality Provisions), p. 1.

this issue.  (Id. at 10 n.2.)

## II.  FACTS REVEALED IN DISCOVERY

### A.  Plaintiff Has Publicized this Case in Three News Publications that Prejudice Public Opinion Against Yale

After obtaining the Court's permission to proceed anonymously, Plaintiff publicized this case and his version of the facts through at least three news articles with the intention of prejudicing public opinion against Yale:

- (1) *A Lawsuit Accuses Yale of Censoring Even Inoffensive Ideas*, published in the *Wall Street Journal* on April 2 and 4, 2017 (online and in print, respectively), among other places, authored by Peter Berkowitz (Ex. K (*Wall Street Journal* Article & Related Postings));

- (2) *Yale Lawsuit Spotlights Title IX, Sexual Assault 'Hysteria'*, published by the website *RealClearPolitics* on March 5, 2017, authored by Peter Berkowitz (Ex. L (*RealClearPolitics* Article)); and

- (3) *Yale Targeted in Federal Title IX Investigation*, published in the *Yale Daily News* on October 13, 2017, and republished in at least one additional source (Ex. M (*YDN* Article & Related Posting)).

Plaintiff assisted in the publication of these national news media articles in numerous ways.  Plaintiff contacted author Peter Berkowitz, asking Berkowitz to write about his case. Plaintiff supplied information to Berkowitz, including documents and interviews, in support of the articles Berkowitz authored for the *Wall Street Journal* and *RealClearPolitics*.  (See Ex. F, Tr. 382:6-11, 383:2-6 (admitting involvement and support in publication of *RealClearPolitics* Article); id., Tr. 385:10-16, 386:9-11 (admitting involvement and support in publication of *Wall Street Journal* Article); Ex. N (Plaintiff's February 24, 2017 Email to J. Rubenfeld), p. 3.)

Plaintiff worked closely with the *YDN* reporters, making many suggestions that were incorporated into the final version of the article, designed to ensure that Plaintiff's version of the facts would be reported and Yale would be prejudiced.  Plaintiff provided the *YDN* with documents containing personal information and facts through which he might be identified, and

spoke with *YDN* reporters using his personal cell phone.  (See Ex. F, Tr. 380:2-25, 381:1-8

(explaining this "was a risk I was willing to take").)  Plaintiff also:

- Succeeded in having the *YDN* write that Yale "directed" Plaintiff to attend sensitivity training, instead of correctly writing that Yale "recommended" he attend training (see Ex. M, pp. 1, 3 (using "directed" twice); Ex. O (Plaintiff's Edits to *YDN* Article), pp. 4, 6));

- Succeeded in persuading the authors to include facts in the article that Plaintiff deemed important to this case (see Ex. M, p. 5; Ex. O, pp. 7, 10 ("I think this is important" and a "key part of the suit is")); and

- Succeeded in having the authors write that he "requested" sex from Jane Doe instead of writing that Plaintiff "initiated" sex with Jane Doe (Ex. M, p. 5; Ex. O, p. 10 (emphasis added)).

(See also Ex. F, Tr. 380:10–381:3 (admitting involvement and support in publication of *YDN*

Article).)

All three articles conformed to Plaintiff's spin of the facts and were critical of Yale.

Among other things, the articles asserted that "Yale restricted Doe's due process rights," (Ex. L,

p. 2), criticized Yale Professor and Chair of the UWC David Post (Ex. L, p. 1), and stated that,

"Surely no female student would incur criticism, much less censorship or punishment, for

providing weighty philosophical authority in support of the proposition that rape is wrong" (Ex.

K, p. 2).

### B. Plaintiff's Counsel Has Promoted Plaintiff's Case in the News to the Prejudice of Yale

Plaintiff's counsel, Susan Kaplan, has joined Plaintiff in actively promoting his case in

the news media.  Attorney Kaplan was quoted in two news articles about this case:  The *YDN*

Article (Ex. M); and an article entitled *Yale Grad Sues University, Claims His Rights Were

Violated Because He's Male*, published in the *New Haven Register* on April 6, 2017 (Ex. P (*New

Haven Register* Article)).  Attorney Kaplan was quoted as saying:

- That Plaintiff had merely committed "a thought crime" and the issues involving the philosophy class were about nothing more than the rape example in Plaintiff's paper

(see Ex. P, p. 2);

- "Yale's response" to Plaintiff's rape analogy in the philosophy paper "was inappropriate because the essay should have been permissible under the standards of academic freedom" (see Ex. M, p. 4);

- "Yale showed bias in hearing Jane and Sally's complaints but refusing to hear John's allegations of physical and emotional abuse" (Ex. M, p. 8); and

- Yale's treatment of Plaintiff was "just out-and-out discrimination" (Ex. M, p. 2), and "just downright bias" (id, p. 8).

Attorney Kaplan selectively spun "facts" to the detriment of Yale, knowing the underlying record did not support her statements.

### C.  Plaintiff Has Disclosed His Identity as a Title IX Respondent to Several People

Plaintiff has disclosed his identity and involvement in Title IX proceedings at Yale to several people, unrelated to his prosecution of this case.  Writing under his own name, Plaintiff emailed documents from the informal Title IX matter and UWC cases to Harvard law school professor Jeannie Suk and disclosed his involvement in the UWC cases to two other Harvard law professors.  (Ex. F, p. 359; Ex. Q (Plaintiff's Communications with Harvard Law Professors) pp. 1–13.)  Plaintiff communicated with Professor Suk and one of the other professors for no purpose related to his defense or this case.  All of the documents he provided to Suk were unredacted, and among the voluminous disclosures he made to them were the real names of Jane Doe and Sally Roe.   Plaintiff also provided Professor Suk with the news articles he helped write about this case.  (See Ex. F, Tr. 359:13-15 (admitting to disclosures); Ex. Q, pp. 11–12.)

Most recently, Plaintiff disclosed his identity when he and Attorney Kaplan attended a conference of Families Advocating for Campus Equality ("FACE"), a national group advocating for men's rights in college campus sexual misconduct proceedings.  Plaintiff spoke at the conference.  (See Ex. F, Tr. 366:9-16, 405:2-9.)  There is no serious question that by attending the FACE conference with his attorney and by addressing the conference, Plaintiff publicly

5

identified himself as someone who had been a respondent in Title IX proceedings.  Similarly, Plaintiff has listed on his résumé various activities related to supporting men accused of sexual misconduct at universities.  (See Ex. R (Plaintiff's Résumé), p. 1.)

### III.    <u>LAW</u>

Pursuant to Rule 17, "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  Rule 10 mandates that "the title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  This Court and the Second Circuit have recognized that requiring a plaintiff to sue in his own name "serves the vital purpose of facilitating public scrutiny of judicial proceedings."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008); *see also, e.g.*, *Doe v. Bausch & Lomb, Inc.*, No. 3:18-CV-00352-VLB, 2018 WL 2248418, at *1 (D. Conn. May 16, 2018).

A plaintiff may proceed under a fictitious name in rare circumstances, but "such discretion should be exercised only in exceptional cases."  *Doe v. Wal-Mart Stores, Inc.*, No. 3:96-cv-1789-AHN, 1997 WL 114700, at *1 (D. Conn. Feb. 25, 1997); *see also, e.g.*, *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006).  Due to the compelling interests served by the default rule requiring plaintiffs to identify themselves, that rule "cannot be set aside lightly."  *Sealed Plaintiff*, 537 F.3d at 189.

"The plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant."  *Id.*  A party "may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs (1) prejudice to the opposing party and (2) the public's interest in knowing the party's identity."  *Id.*  The Second Circuit has endorsed a "non-exhaustive" list of ten factors to consider as part of this balancing analysis, but cautioned that "district courts should take into account other factors relevant to the particular case under consideration."  *Id.* at 189–90.  Courts sometimes find that

not all of the Second Circuit's factors weigh strongly in favor of either anonymity or disclosure, and accordingly focus on factors more relevant to the situation at hand. *See Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264, 275 (E.D.N.Y. 2015).

This Court has considered a plaintiff's efforts to publicize his case when analyzing a plaintiff's request for anonymity. In *Doe v. Wal-Mart*, the plaintiff "publicized his charges against [the defendant] through the newspapers which published articles about the case and quoted his attorney's characterization of it . . . ." 1997 WL 114700, at *1. The Court denied the plaintiff's motion to proceed anonymously, noting "when a plaintiff publicly accuses a defendant of serious violations of federal law, basic fairness dictates that those among the defendant's accusers who wish to participate in the suit as individual party plaintiffs must do so under their real names." *Id.* at *1–2 (internal quotation marks omitted). The Court reasoned it was particularly inappropriate to allow the plaintiff to use a fictitious name "in view of the fact that the plaintiff voluntarily disclosed the circumstances of the case to the press and made serious charges against the defendant." *Id.* at *1. Fairness required the plaintiff to "be prepared to stand behind his charges publicly." *Id.* (alteration omitted).

Likewise, this Court's reasoning in *John Doe v. Wesleyan University*, No. 3:14-cv-1735-SRU (D. Conn. Aug. 20, 2015), ECF No. 30 ("*Wesleyan Anonymity Ruling*" (copy in Appendix)), *reconsideration denied*, ECF No. 37, is particularly instructive. In that reverse Title IX case, Judge Underhill denied the plaintiff's motion to proceed under a pseudonym. *See Wesleyan Anonymity Ruling*. The plaintiff had asserted that the accusations against him were "personal and embarrassing" and that he feared retaliation if his identity were disclosed. *Id.* at 2. Judge Underhill rejected the plaintiff's arguments and ordered him to file a complaint under his own name. *Id.* at 2–3. The Court held: "Student disciplinary proceedings in general and allegations of sexual misconduct in particular are surely sensitive and personal, but the plaintiff

has not established that the particular allegations giving rise to this litigation . . . are so sensitive that they justify permitting him to prosecute his case against his University without disclosing his identity." *Id.* Judge Underhill reasoned:

> This is not a case of a plaintiff who must admit to sensitive or embarrassing conduct, or to a demeaning private harm, in order to pursue his claims; on the contrary, the plaintiff claims he was wrongfully accused and publicly harmed. He ostensibly seeks to *vindicate* his name, which he claims the defendant besmirched, and the nature of the allegations alone is not sufficient cause to conceal it. Nor does his relatively bare assertion that he fears retaliation rise above what very many civil litigants might genuinely feel. And because the interested parties to the original controversy are presumably known to each other, it is not clear how concealing his name from the public will avoid whatever risk of retaliation he believes he runs by proceeding with the case.

*Id.* at 3 (emphasis in original).

The plaintiff then moved for reconsideration, which the Court denied. *See John Doe v. Wesleyan University*, No. 3:14-cv-1735-SRU (D. Conn. Nov. 23, 2015), ECF No. 37 ("*Wesleyan Reconsideration*" (copy in Appendix)). The plaintiff had submitted a declaration from his employer expressing a preference that he not be publicly associated with the case and reiterated his fear of retaliation. *Id.* at 2. Judge Underhill rejected the plaintiff's submission, concluding the plaintiff could not overcome "the presumption in favor of open proceedings and public disclosure." *Id.* Judge Underhill also considered the plaintiff's efforts to publicize the case, citing this as a factor weighing against anonymity:

> [W]hatever risk is attendant to being publicly associated with this case is not ultimately avoidable, especially in light of the fact that the plaintiff's identity is presumably known to all interested parties in the original controversy and is easily discoverable to a much larger community associated with his school – a risk that is surely increased by any efforts to publicize the case, as, for instance, in the *BuzzFeed.com* article that Wesleyan attaches to its opposition, in which the plaintiff, under an assumed name, presented a detailed account of his side of the relevant events (doc. #35-10). Wesleyan is required to defend itself publicly, and the plaintiff has not established that the circumstances warrant affording him alone the advantage of anonymity. Although the original controversy is embarrassing to the plaintiff and could expose him to negative public opinion, the nature of the allegations does not outweigh the public's interest in disclosure . . . .

*Id.* at 2–3.  Judge Underhill was keenly attuned to the plaintiff's efforts to publicize his case and the resulting prejudice to Wesleyan.

Many courts have concluded that a plaintiff is *not* entitled to proceed anonymously in cases involving university sexual misconduct findings.  *See*, *e.g.*, *Doe v. Temple Univ.*, No. CIV.A. 14-04729, 2014 WL 4375613, at *2 (E.D. Pa. Sept. 3, 2014) (denying plaintiff's request to proceed under a pseudonym, stating that there "are many examples of plaintiffs proceeding with suits in their own names protesting sexual assault discipline from universities," and collecting cases); *see also Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 WL 3212079, at *1 n.3 (N.D.N.Y. Feb. 24, 2016) (noting that United States Magistrate Judge had previously concluded that plaintiff could not proceed anonymously); *Juan Doe v. Swarthmore College*, No. 2:15-cv-01355-JCJ (E.D. Pa. June 9, 2015) (denying plaintiff's request to sue college anonymously based on internal sexual assault proceeding); *John Doe v. Temple University*, No. 2:13-cv-05156-MSG (E.D. Pa. August 7, 2014) (granting defendant university's motion to compel plaintiff to use his actual name in the case caption in sexual misconduct case); *Jane Doe v. Univ. of Rhode Island*, No. CIV.A. 93-0560B, 1993 WL 667341 (D.R.I. Dec. 28, 1993) (concluding that victim of sexual assault was not entitled to anonymity); Ruling and Order, *John Doe v. Wesleyan University*, No. 3:14-cv-1735-SRU (D. Conn. Aug. 20, 2015), ECF No. 30 ("*Wesleyan Anonymity Ruling*" (copy in Appendix)), *reconsideration denied*, ECF No. 37 (denying plaintiff's request to proceed under a pseudonym).

## IV.   ARGUMENT

### A.  Plaintiff's Promotion of This Case to The News Media Has Prejudiced Yale and Renders Anonymity Inappropriate

As Judge Underhill recognized in *Wesleyan*, it is unfair to allow the Plaintiff to promote his version of events in the news media anonymously while Yale must defend its name publicly.

*See Wesleyan Reconsideration*, at 2–3 ("Wesleyan is required to defend itself publicly, and the plaintiff has not established that the circumstances warrant affording him alone the advantage of anonymity."); *see also Doe v. Wal-Mart Stores, Inc.*, 1997 WL 114700, at *1, *Free Mkt. Comp. v. Commodity Exch., Inc.*, 98 F.R.D. 311, 313 (S.D.N.Y. 1983) ("[W]hen a plaintiff publicly accuses a defendant of serious violations of federal law, basic fairness dictates that those among the defendants' accusers who wish to participate in the suit as individual party plaintiffs must do so under their real names." (internal quotation marks omitted)); *see also*, *e.g.*, *Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) ("Shakur has been publicly accused.  If plaintiff were permitted to prosecute this case anonymously, Shakur would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity.").

Plaintiff's publication of news articles with misleading statements of fact has swayed public opinion against Yale and thereby prejudiced it.[3]  The most glaring example is Plaintiff's insistence in the articles that his philosophy class paper was the only basis for the informal Title IX meeting.  (See Ex. K (*Wall Street Journal* Article); Ex. L (*RealClearPolitics* Article); Ex. M (*YDN* Article).)  That is factually inaccurate, but it is a contention that Plaintiff has advanced frequently in this litigation.  (Compare Ex. A, p. 1 & Ex. B, pp. 2-3, with Ex. K, p. 2; see also Ex. L; Ex. M.)  Moreover, the articles falsely claim that Plaintiff was "directed" to attend

---

[3] Yale requests that the Court take judicial notice of the following facts:

The *Wall Street Journal* is a national, well-read publication with significant readership in this area.  The *Journal*'s website receives 30.2 million U.S. visitors each month and has a circulation of nearly 90,000 across New England.  *See* Circulation & Distribution Areas, *The Wall Street Journal*, *available at* https://classifieds.wsj.com/circulation-distribution-areas/.

*RealClearPolitics* is a national publication with many readers, averaging 7 million page views per month from 500,000 unique visitors to its website. *See* Our Audience, *RealClearPolitics*, *available at* http://dyn.realclearpolitics.com/media_kit/our_audience.php; Site Statistics,  *RealClearPolitics*, *available at* http://www.rcpblog.com/dev/advertise.html.

The *YDN* has 700,000 online page views per month, distributes 5,000 copies of its paper every weekday to the Yale and New Haven communities, and has hundreds of subscribers outside of New Haven.  *See* Why Advertise?, *Yale Daily News*, *available at* https://yaledailynews.com/business/why-advertise/.

training as a result of the informal Title IX meeting.  The record shows that training was offered as a suggestion or request to Plaintiff in light of all the circumstances.  (See Ex. A, pp. 1–2; Ex. M, pp. 1, 3.)  Regardless, Plaintiff has created a public narrative that the issues involving his philosophy class were nothing more than the efforts of Yale's representatives to trample academic freedom.  There are few accusations more likely to tarnish the reputation of a university and its administrators than this one, and Plaintiff has had the luxury of making it from behind a mask of anonymity.  It is not a stretch for Yale to be concerned that academic professionals may be reluctant witnesses if Plaintiff is allowed to foster a false narrative.[4]  The only way to end Plaintiff's mischaracterizations is to compel him to identify himself so that any false assertions that he chooses to make are tied to his own name instead of "John Doe."

Plaintiff's justification for proceeding anonymously is further eroded by the fact that he does not hesitate to reveal his own identity and those of Jane Doe and Sally Roe whenever he believes that it is in his best interests to do so.  Plaintiff's insistence that the Court protect his privacy rings hollow in the face of his decision to share his name and unredacted UWC documents with a *Wall Street Journal* reporter and a Harvard professor and to speak publicly at a conference on due process in Title IX proceedings.  (See, e.g., Ex. F, Tr. 120:15-18, 186:15–187:5; Ex. H pp. 1–9; Ex. I at 1, 4, 12, 16; Ex. K; Ex. L; Ex. M; Ex. O; Ex. Q, p. 7–9.)  Like the plaintiff in *Wesleyan*, Plaintiff has forfeited the privilege of proceeding anonymously by strategically disclosing confidential information when it suits his purpose.

## B.  The Remaining *Sealed Plaintiff* Factors Do Not Support Continued Anonymity

This Court need not proceed further in its analysis of the factors relevant to the privilege of proceeding anonymously, but should it choose to do so, it will find that they do not support

---

[4] Indeed, Plaintiff's Amended Complaint (Doc. No. 27), which asserts that Plaintiff in violation of his academic freedom, has been linked to a blog discussing this case on a website that identifies itself as the "world's most popular philosophy blog for more than a dozen years."  (See Ex. S (Philosophy Blog Post), p. 1.)  One of the topic links identified in the blog post is "academic freedom."  (Id., p. 1.)

Plaintiff's position.

### 1. The Sensitivity and Personal Nature of the Matters at Issue Have Not Been Sufficient to Prevent Plaintiff from Speaking Publicly About Them

The first factor considers whether the matters at issue are "highly sensitive and of a personal nature." *Sealed Plaintiff*, 537 F.3d at 190.  The matters in this case are not so "highly sensitive" nor of such a "personal nature" that Plaintiff has refrained from speaking about them publicly.  As Judge Underhill explained in *Wesleyan*; *see Wesleyan Anonymity Ruling* at 2–3; the informal meeting regarding Plaintiff's philosophy class and the Sally Roe UWC proceeding, which involved non-consensual sexual contact, are insufficient to render this case highly sensitive and personal.  Though the Jane Doe proceeding involved more sensitive allegations, the fact that Plaintiff has discussed those allegations with so many people and supported the publication of news articles about Jane Doe's assertions (see Ex. K; Ex. L; Ex. M; Ex. O) establishes that they are not sufficiently sensitive to justify anonymity in this case.

### 2. The Risk of Retaliation or Other Harms is not High Enough to Justify Anonymity, and Plaintiff is Not Particularly Vulnerable

The second, third, and fourth factors consider, generally, the harms a plaintiff would suffer if his or her name were disclosed and whether the plaintiff is particularly vulnerable to those harms.  *Sealed Plaintiff*, 537 F.3d at 190.  Plaintiff has failed to identify any specific risk of harm, and his general assertions that he needs to protect his identity and reputation, (Doc. No. 4/19), are insufficient to permit this Court to conclude that Plaintiff would suffer harm if he had to proceed under his own name.  *See, e.g.*, *Doe v. Shakur*, 164 F.R.D. 359, 361 n.1 (S.D.N.Y. 1996) (refusing to grant anonymity where plaintiff had allegedly received death threats because plaintiff failed to provide any details about those threats or explain the specific nature of the harm she expected if her name was disclosed); *see also Swarthmore College*, No. 15-cv-01355-JCJ (rejecting an almost identical vague "reputational" harm argument).  In any event, any

specific concerns Plaintiff has about possible harm have not been sufficient to prevent him from publicizing this case in the news media and taking what he admits are risks regarding the possible disclosure of his own identity.  (See Ex. F, Tr. 380:2-25, 381:1-8.)

Judge Merriam rightly assumed based on the information then available to her that Plaintiff was particularly vulnerable because the disclosure of his identity could "jeopardize his post-graduate education and employment prospects."  (Doc. 10 at 9.)  However, the fact that Plaintiff has discussed the matters underlying this case with three Harvard Law School professors, despite the fact that Harvard Law School is the "only law school that [Plaintiff] ever really wanted to go to," (Ex. F, Tr. 399:3-4), and has listed information on his résumé suggesting his involvement in Title IX proceedings,[5] (Ex. R, p. 1), demonstrates that Plaintiff is not overly concerned with the potential impacts of disclosure on his educational or employment prospects. In any event, the court in *Doe v. Temple University*, No 2:13-cv-05156-MSG, rejected the plaintiff's contention in that case that he would not be accepted to dental school if he had to disclose his name, explaining that "such fears are typically insufficient to confer anonymity."

Finally, as in *Wesleyan*, Plaintiff in this case does not need to "admit to sensitive or embarrassing conduct, or to a demeaning private harm, in order to pursue his claims; on the contrary, the plaintiff claims he was wrongfully accused and publicly harmed" and "seeks to *vindicate* his name."  *Wesleyan Anonymity Ruling* at 2–3 (emphasis in original).  Plaintiff's position is that he was wrongly accused of non-consensual sexual intercourse and was otherwise unfairly targeted by Yale, and, if he prevails, his name would not be irreversibly tarnished as a result of it being associated with this action.[6]

---

[5] Plaintiff used the philosophy paper that contains the rape example as a writing sample as part of an internship application.  (see Ex. T (Application Email)); Ex. Q, p. 8 (identifying same document as "the offending paper").)

[6] At his deposition, Plaintiff stated in no uncertain terms that he would win this case.  (See Ex. F, Tr. 400:3.)

### 3. An Alternate Method for Protecting Confidential Information is in Place

The tenth factor addresses alternate methods for protecting confidentiality.  *Sealed Plaintiff*, 537 F.3d at 190.  This Court's standing protective order and stipulated protective order to protect FERPA information, (Doc. No. 7; Doc. No. 61), protect the vast majority of documents that have been exchanged in the discovery process and provide an alternate method for protecting confidential information, including information about Jane Doe and Sally Roe. Yale is not seeking to alter that order or to make any of those documents public.  Rather, Yale requests, in the name of fundamental fairness, that this Court require Plaintiff to stand publicly behind the allegations he has made and promoted in the news media.  No confidential details about the underlying UWC cases will be made public or tied to Plaintiff's name, aside from the allegations in Plaintiff's operative Second Amended Complaint.

### 4. The Public Interest in this Case is Strong, As Is Yale's Interest as a Respected Private Institution in Protecting its Good Name

The fifth, eighth, and ninth factors consider the public's interest in the litigation and whether the defendant is a private entity with a reputation to protect.  *Sealed Plaintiff*, 537 F.3d at 190; *see also Shakur*, 164 F.R.D. at 361 n.1 (noting that defendant's reputational interest weighs against anonymity where a defendant is a private party rather than the government).

Title IX issues and the handling of campus sexual misconduct allegations have been a matter of national interest for many years.[7]  *See, e.g.*, *Collick v. William Paterson Univ.*, No. 16-471-KM-JBC, 2016 WL 6824374, at *1 (D.N.J. Nov. 17, 2016) ("The manner in which colleges address allegations of sexual assault on campus is an issue of great public concern."), *aff'd in part, remanded in part*, 699 F. App'x 129 (3d Cir. 2017); *see also Colgate Univ.*, 2016 WL 1448829, at *2 (noting high level of media attention); *Doe v. Temple Univ.*, 2014 WL 4375613,

---

[7] In addition to the news articles discussed above, at least one other publication has discussed this case, although that article was not to Yale's knowledge written with direct involvement by Plaintiff or his counsel.  (See Ex. U (*New Haven Patch* Article).)

at *2 (noting issue commands national attention).  Like all educational institutions, Yale has a strong interest in not having the integrity of its process unfairly attacked.  Attacks such as those launched by Plaintiff undermine the confidence of participants in Title IX proceedings and are detrimental to everyone involved.  The public interest therefore weighs strongly in favor of requiring Plaintiff to disclose his name so that the public can judge for itself the validity of what Plaintiff alleges.

Moreover, Yale is a respected private institution that has a strong interest in publicly defending its reputation against the serious allegations asserted by Plaintiff.  That Plaintiff is suing a private entity weighs in favor of requiring Plaintiff to disclose his name, "because governmental bodies do not share the concerns about 'reputation' that private individuals have when they are publicly charged with wrongdoing."  *Shakur*, 164 F.R.D. at 361 n.1; *see also, e.g.*, *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992); *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).

## V.  CONCLUSION

Anonymity is reserved for extraordinary cases.  The only exceptional thing about this case is the lengths to which Plaintiff and his attorney have gone to publicize and promote Plaintiff's version of the facts.  Plaintiff's actions render his continued status as "John Doe" fundamentally unfair and unwarranted.  For these reasons, as well as all the others discussed above, this Court should revoke Plaintiff's cloak of anonymity and require him to file a Complaint under his actual name.

DEFENDANT,
YALE UNIVERSITY

By: */s/ James M. Sconzo*
James M. Sconzo (ct04571)
Jillian R. Orticelli (ct28591)
CARLTON FIELDS
One State Street, Suite 1800
Hartford, CT  06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email:  jsconzo@carltonfields.com
             jorticelli@carltonfields.com

Its Attorneys

115527977

16

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that on this 17th day of August, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

 <u>/s/ James M. Sconzo</u>
James M. Sconzo
