# EXHIBIT M

**Story by Maya Sweedler, (http://yaledailynews.com/blog/author/mayasweedler/) Finnegan Schick (http://yaledailynews.com/blog/author/finneganschick/)**
**Photograph By Rebecca Finley**
Published on October 13, 2017



Yale was under federal investigation from April to September of this year after an alumnus filed a complaint with the federal Department of Education's Office for Civil Rights alleging that the University discriminated against him in its Title IX procedures because he was a man.

The case alleges that the student, an anonymous member of the Yale College class of 2015 referred to as "John Doe," first experienced discrimination when a teaching assistant for an introductory philosophy course reported him to Yale's Title IX office in fall 2013 after he submitted an essay that included a discussion of the impulses that might drive someone to commit rape. After the incident, Yale prohibited Doe from contacting the TA and directed him to attend sensitivity training at Yale Mental Health & Counseling.

Documents provided to the News — including redacted correspondences provided by the plaintiff and court filings — reveal that Doe came before the Title IX office on two subsequent occasions: first in spring 2014 and again in fall 2014 after two female students accused him of sexual assault. Following these allegations, Yale placed Doe on probation for the remainder of his Yale career and banned contact between him and the two female students.

After graduating in May 2015, Doe filed complaints both in federal district court and with the regional OCR branch in Boston alleging that Yale had violated his Title IX rights. Title IX, a clause in the U.S. Education Amendments of 1972, protects people in schools that receive federal funding from discrimination on the basis of their sex.

Following review, Doe's complaint made its way to the OCR's Washington, D.C. branch during then-President Barack Obama's administration. On April 17, 2017, it became one of the first civil rights violation cases taken up by the Department of Education under President Donald Trump.

But because of a rule prohibiting the OCR from investigating cases being pursued in federal court, Doe's case was dropped on Sept. 26, a Department of Education spokesman confirmed.

In many Title IX complaints filed by male students, plaintiffs claim the school arrived at an "erroneous outcome" or selectively enforced Title IX. Doe's complaint against Yale goes one

step further, alleging the school permitted an environment hostile to him.

"Due process isn't really the issue here," said Susan Kaplan, one of Doe's two lawyers. "It really is just out-and-out discrimination. You wouldn't do this to a girl. If a female student writing about Plato had made an example of the crime of rape, nobody would bat an eye."

On Oct. 6, Yale's lawyers filed a response to Doe's complaint defending the University's procedures and blaming Doe for any damages incurred.

"Yale's actions were justified by legitimate, nondiscriminatory reasons," the response states. "Yale has proper policies and procedures in place to prevent and remedy claims of sex and gender discrimination and actively enforces such policies and procedures."

University Title IX Coordinator Stephanie Spangler, Senior Deputy Title IX Coordinator Jason Killheffer and chair of the University-Wide Committee on Sexual Misconduct David Post each declined to comment, referring questions to Yale's Office of Public Affairs and Communications.

In a statement to the News, Yale spokesman Tom Conroy called the lawsuit "factually inaccurate" and the legal claims baseless.

The five-month period during which Yale was under investigation marks the first time since 2011 that the University has come into the OCR's crosshairs. The 2011 complaint, filed by 16 students and alumni and precipitated by the infamous incident in which Delta Kappa Epsilon fraternity pledges yelled a sexually aggressive chant outside the Yale Women's Center, coincided with the establishment of the University-Wide Committee on Sexual Misconduct in April 2011.

The open-and-shut OCR investigation will not likely lead to an overhaul of Yale's sexual misconduct procedures. Doe still has a federal lawsuit awaiting resolution in Hartford, alongside two others filed by male Yale students — three lawsuits that allege Yale has tipped the scales against the accused in sexual misconduct proceedings. The plaintiffs' claims have yet to be adjudicated, but the similarities in these lawsuits are indicative of the escalating pressures the University faces as it seeks to address a contentious and politically charged issue.

## APPETITE AND REASON

As a junior, Doe enrolled in "Introduction to Ancient Philosophy," a lecture course taught by Yale philosophy professor Verity Harte. In an essay on justice in the "Republic," Doe argued that under Plato's theory of a three-part soul, rapists are driven primarily by lust and a desire for power, and that these impulses conflict with reason in the act of sexual assault.

"I believe spirit can be allied with appetite against reason," Doe wrote, according to the lawsuit. "A rapist may rape with much vigor, or with anger. Here, presumably, reason should dictate not to rape. However, the person rapes with passion. Is spirit not allied with appetite against reason in this case?"

In the paper's conclusion, Doe wrote: "It is improbable that it would be the case that rapists are universally not in touch with a reason telling them that their conduct is counter to reason."

The female graduate student who served as Doe's TA told Yale's Title IX office that the paper made her uncomfortable and that Doe had been disrespectful to her throughout the term, according to the lawsuit. In her Title IX complaint, the TA claimed that Doe remarked during office hours before writing a paper that he thought philosophy department faculty members do not have good sex.

After speaking with Harte and the TA, Yale College's Title IX Coordinator at the time and the current Dean of Undergraduate Education Pamela Schirmeister '80 GRD '88 emailed Doe several times in November and December 2013, asking him to meet with her to discuss "a report that has come [her] way" about "a paper you submitted in a class," according to emails provided to the News.

In the University's response to Doe's lawsuit, Yale's lawyers admitted that the TA made an "informal report of sexual harassment" after Doe's comment during office hours. Schirmeister did not refer the complaint to the University-Wide Committee on Sexual Misconduct. But during a Dec. 5 meeting, she directed Doe to speak with a staff member at Yale's Center for Sexual Harassment and Assault Response & Education. For the remainder of the course, Doe's papers were to be graded by Harte, rather than the TA. He was also instructed to go to Harte, not the TA, with any course-related questions.

Schirmeister told the News she can "state unequivocally" that she neither imposed a punishment on Doe nor told him what he could or could not write in his class papers.

Harte, who is on temporary medical leave until Oct. 17, did not respond to a request for comment.

Philosophy professor and acting department chair Shelly Kagan told the News that Yale's philosophy department does not, as far as he is aware, have an official policy regarding the use of examples in papers.

Kagan said that in principle, even a relevant example could be used in an offensive, insensitive or gratuitous way. He added that, because he does not know the undergraduate in question or any of the relevant details of the incident, he cannot say whether the actions of the parties involved were appropriate.

"I haven't seen the paper. I would need to know the assignment, review the relevant passages in Plato. In principle, any example could be apt or could be irrelevant," Kagan said. "If the question were merely, in principle, could an example involving rape be well-crafted, well-presented in a philosophy paper, the answer is yes, of course it could."

Kaplan, the lawyer for John Doe, said Yale's response to the incident — the first alleged instance of sexual discrimination mentioned in Doe's complaint — was inappropriate because the essay should have been permissible under the standards of academic freedom.

"If the TA didn't like his example, she thought it was inappropriate … you give him a lower grade," Kaplan said. "But you don't say, 'You absolutely can't talk about this.' That's a manufactured problem that Yale stepped in to address. And the way they addressed it was to take away from his education."

### JANE DOE ALLEGES SEXUAL ASSAULT

The following semester, Yale's Title IX office investigated John Doe on a second occasion, this time in connection with allegations brought against him by a former sexual partner, a woman referred to in the complaint as Jane Doe.

The lawsuit describes at length John's sexual relationship with Jane, which began in fall 2013 and continued through much of the spring. The lawsuit alleges that Jane was emotionally manipulative and physically aggressive toward John during this period.

In its legal response, Yale confirmed that John and an adviser he brought with him to University-Wide Committee proceedings told the panel that John and Jane had consensual sex on past occasions but denied that the University-Wide Committee had deemed these interactions "undisputed fact."

On March 6, 2014, Jane went to John's apartment, where the two had sexual intercourse that night, according to statements of theirs cited in both the lawsuit and Yale's response.

In an April 4 conversation at the SHARE Center about that night, Jane said that after a heated discussion, John forced her into his bed and sexually assaulted her, according to the lawsuit. She filed a complaint with the University-Wide Committee that same day, Yale's response says.

Because disclosing University-Wide Committee documents is a disciplinable offense, Jane's version of events as documented in the Yale fact-finder's report remains confidential. The fact that John's version was made public in court filings does not mean a judge will accept it as true.

According to John's lawsuit, on the night of the alleged sexual assault, Jane learned that John had had a sexual encounter with another student — identified as Sally Roe — shouted at John and refused to leave his apartment. After Jane followed John to his bedroom and refused to leave, the lawsuit continues, John requested sex. Jane eventually retracted her accusation of forcible sex, according to the lawsuit.

The University-Wide Committee panel ultimately reached no finding of force against John. It initially recommended he be suspended for two semesters, but then-Dean of Yale College Mary Miller reduced the punishment to probation for the remainder of John's time at Yale, citing an analogy to one of the University's Sexual Misconduct Scenarios.

(http://smr.yale.edu/sites/default/files/files/Sexual-Misconduct-Scenarios.pdf)

"I find it particularly significant that [Jane] voluntarily joined [John] in bed after he requested that they have sex, and the ambiguity created by her action was such that the penalty should be at the low end of the range suggested by the scenario," Miller wrote in a letter conveying her decision to the University-Wide Committee on June 19.

But before Miller made her final decision, Doe's advisor, Yale Law School professor Jed Rubenfeld, sent a seven-page letter to her on June 11 — provided to the News in redacted form — in which he expressed his concern that the University-Wide Committee's findings and recommended punishment reflected gender bias, and urged Miller to reduce the punishment to probation.

"Yale and other universities face a serious problem of on-campus sexual assault," Rubenfeld wrote to Miller. "But this matter is extremely unusual … I want to stress as strongly as possible that, in my judgment, reasonable people will be very troubled — perhaps outraged — if on these facts a student at Yale were found guilty of engaging in sexual intercourse without the other party's consent."

Rubenfeld has since criticized several aspects of current federal Title IX guidelines — most of which were established in 2011 — in op-eds and scholarship.

"Many aspects of the post-2011 procedures, both at Yale and elsewhere, raise serious due process concerns, including concerns about the standard of proof, limits on cross-examination, the absence of legal representation and incompetence or structural bias in Title IX personnel and in the hearing decisionmakers," he told the News.

According to the lawsuit, John attempted to file a complaint of emotional and physical abuse against Jane but was rebuffed by the UWC on the grounds that it was an act of retaliation.

In its response to the lawsuit, Yale denied these allegations.

### SALLY ROE BRINGS SEPARATE CLAIM

The final allegation brought against John Doe came in October 2014, when the Sally Roe referenced in the Jane Doe case requested a no-contact order, alleging that John had stalked and sexually assaulted her, the lawsuit claims. After initially cooperating with the fact-finder, Roe did not appear at the University-Wide Committee hearing.

Ultimately, the University-Wide Committee found that Doe did not violate Yale's Sexual Misconduct Policy but instituted another no-contact order, this time between John and Sally. John's counter-complaints and evidence that Sally fabricated her allegations were dismissed without investigation, according to the lawsuit.

Yale informed Doe of Roe's allegations of sexual misconduct in a meeting between him, former Yale College Title IX coordinator Angela Gleason, Senior Title IX coordinator Jason Killheffer and Rubenfeld in November 2014, according to Yale's response to the lawsuit.

After Doe and Killheffer clashed over restricting Doe's access to the residential college where Sally Roe and many of Doe's friends lived, Killheffer filed a formal complaint against him with the University-Wide Committee, the lawsuit claims.

In its response, Yale denied Doe's claim that the University's decision to file the formal complaint was retaliatory. Instead, Killheffer said he filed the complaint "because of a pattern of allegations involving restraint."

"Yale knew that Jane retracted her allegation of forcible sex, conceded that she willfully went into bed with him and still brought another Title IX claim against him based on what they called a repeated pattern of the same claim of being forced into bed," Kaplan said. "But it was a claim that had been retracted. It was a false claim."

In the lawsuit, Doe alleges that Roe learned about the Jane Doe case through the Yale Chaplain's Office, a religious community that was the center of John's social life, because someone affiliated with the office may have leaked confidential information about the incident.

"We feel there were serious breaches of confidentiality," Kaplan said. "All roads seem to point to the Chaplain's Office. Jane and Sally and John all had reason to be involved with the Chaplain's Office and that's where we feel the crux of the confidentiality issues occurred."

Megan Doherty — who worked as a Reconstructionist rabbi at Slifka from 2010 to 2014 and is identified in the University's response as one of two female members of the Chaplain's Office involved in the case — provided the News with the following statement:

"During the academic year of 2013–14, I was working in a pastoral capacity with a student who disclosed to me that she had been sexually assaulted by a member of the campus Jewish community," wrote Doherty, who is currently the director of Hillel and Jewish Campus Life at Oberlin College. "As I worked to support her in her process, I was simultaneously in conversation with members of the college administration and Slifka senior staff about the best ways to make sure our building remained a safe place for students."

The News was unable to obtain a comment from the other female staff member involved, Reform Rabbi Leah Cohen, who left Yale over the summer.

Kaplan said Yale showed bias in hearing Jane and Sally's complaints but refusing to hear John's allegations of physical and emotional abuse.

"They didn't allow John to bring a claim against Jane for the physical abuse and the stalking she subjected him to," Kaplan said. "So she got off scot-free for abusing him throughout the course of the relationship. He got probation ... and a third claim [Sally's complaint] slapped against him."

The lawsuit argues that John's experience of the March 6 incident meets Yale's own SHARE Center definition of an abusive relationship. However, the lawsuit argues that Yale did not recognize John as a victim of intimate partner violence because of the two parties' genders.

"That same scenario, given that it was the male student being harassed, for some reason, it's his fault," Kaplan said. "This is just downright bias."

## FEDERAL INVESTIGATIONS INTO TITLE IX

Doe filed his complaint with the Department of Education's Office for Civil Rights on July 14, 2015. The OCR thought Doe's claim had potential and sent it from the regional office to the D.C. office in September 2016, according to emails between Doe and the OCR. But by then, the presidential campaign was in full swing and the complaint languished for months.

Once the Trump Department of Education began looking at Title IX complaints, Yale was one of the first universities to come under scrutiny. On April 12, Secretary of Education Betsy DeVos hired Candice Jackson, currently the acting assistant secretary in the OCR, and the investigation into Yale was opened five days later.

According to a copy of the letter announcing the investigation, the OCR believed it was justified in investigating Yale for three primary reasons: The University failed to inform Doe of all allegations against him, denied him the chance to provide a full statement to the University-Wide Committee panel and did not consider the evidence he submitted before it made a final decision.

"You alleged that the University discriminated against you on the basis of sex by failing to provide an equitable hearing process during spring 2015," the OCR wrote to Doe. "Because OCR has determined that it has jurisdiction over Allegation 1 and that it was timely filed, OCR is opening this allegation for investigation."

A Department of Education spokesman told the News that the case was closed last month when the OCR learned that Doe had filed a complaint in federal court in Hartford and that the case was pending. Doe can refile his case within 60 days of the termination of federal court proceedings as long as the courts have not ruled on the case, the spokesman said.

Yale's grievance procedures were the focus of the 2011 OCR investigation sparked by the DKE chant. Before 2011, the University addressed cases of student-on-student sexual misconduct through both the Executive Committee and the Sexual Harassment Grievance Board. Considered an informal recourse for students, the Grievance Board offered support and short-term remedies — such as changes to course schedules — to complainants, but had little enforcement power.

By the end of the 2011 investigation, OCR concluded that ExComm, the formal body for adjudicating Title IX complaints, was also inadequate. Primarily a disciplinary body, ExComm "focused on the alleged perpetrator and his/her rights and not on affording the complainant a prompt and equitable resolution of his/her sexual misconduct complaint," the OCR wrote in a June 2012 letter announcing the University's voluntary resolution agreement.

The structure of Yale's disciplinary process contradicted a recent federal directive, known as the "Dear Colleague Letter," instructing all universities that receive federal funding to use a "preponderance of evidence" standard in sexual misconduct cases, rather than the higher "clear and convincing evidence" standard. It also discouraged universities from allowing the parties involved to personally cross-examine one another.

Last month, DeVos rescinded the "Dear Colleague Letter" and issued temporary guidelines allowing schools to return to the "clear and convincing evidence" standard. In her Sept. 22 response (http://provost.yale.edu/title-ix-statement-sept-22) to the announcement, University Title IX Coordinator Stephanie Spangler pledged not to switch back to the higher standard. She added that Yale's policies are "largely consistent" with the new requirements.

Yale's current procedures date back to the "Dear Colleague Letter," although its unified system for addressing allegations of misconduct was already in the works. In its answer to Doe's lawsuit, Yale denied that it created the University-Wide Committee in response to the OCR's 2011 investigation.

"For some reason … the administration has positioned themselves publicly and visibly as taking a stand against any change with respect to the 'Dear Colleague Letter,'" said Andrew Miltenberg, a New York-based attorney who specializes in campus assault due process. "We're going to continue to see cases coming out of Yale disciplinary hearings, and they might be sued over, and they might be viewed as unreasonable or unfair."

## YALE'S PROCEDURES UNDER FIRE

After it was established in 2011, the University-Wide Committee was initially praised as a thorough, streamlined (http://naspa.tandfonline.com/doi/full/10.1080/00091383.2012.655213?src=recsys#.WdlpiROPIWo) system. In addition to clarifying the University's definition of sexual misconduct, the body established formal and informal processes for addressing allegations of misconduct. It laid out investigation timelines, confidentiality guidelines and a definition of consent. Thanks in part to its formation, Yale's 2012 voluntary resolution agreement with the OCR established that the University was not in noncompliance with Title IX.

But the new system faced challenges in its first few months. In January 2012, the New York Times revealed (http://www.nytimes.com/2012/01/27/sports/ncaafootball/at-yale-the-collapse-of-a-rhodes-scholar-candidacy.html) that Yale football quarterback Patrick Witt '12 was the subject of an informal complaint that had cost Witt his Rhodes Scholarship candidacy. The informal complaint process, the Times noted, meant that "an individual or a few members of the committee are charged with resolving the issue, without a full investigation or a finding of guilt or innocence."

Around this time, a Yale junior was accused of sexual assault and later became the first student expelled under the new formal complaint process. In 2015, the male student filed a complaint against Yale accusing the University of violating his Title IX rights.

The lawsuit was the first of three legal challenges to the University-Wide Committee or its proceedings filed against Yale in federal court in the district of Connecticut.

The plaintiff alleged that the University selectively enforced Title IX guidelines, that the University-Wide Committee panel allowed new evidence from the complainant to enter the hearing and that Yale failed to grant the respondent access to legal counsel.

This case has a settlement conference in Hartford on Oct. 18, according to publicly available court records. Gary Kurtz, the plaintiff's lawyer, said his client has not decided whether to settle at this time, but noted that the overwhelming majority of cases end in settlements.

While some of the allegations in the first lawsuit — such as the claim that the University denied the plaintiff "the right to confront and/or cross-examine his accuser" — contradict the OCR's 2011 directive, other charges resemble those brought in two subsequent lawsuits filed against Yale.

The next lawsuit, filed in June 2016 by former men's basketball captain Jack Montague, also emerged out of an expulsion. Montague's lawsuit — which, due to his position on the basketball team during a high-profile season, attracted more national attention than the other two — also accused the University of violating Title IX rights and failing to observe due process.

Like the John Doe case, the Montague lawsuit also alleges that the complainant initially did not want to file a formal complaint with the University-Wide Committee. In both cases, Yale's Title IX office filed on behalf of the complainant.

"The structural problems inherent in the [University-Wide Committee] process result in a fundamental denial of due process, which is central to a fair outcome," said a spokesperson for Max Stern, the attorney representing Montague.

Still, these court challenges are not necessarily indicative of the University-Wide Committee's stability, said Miltenberg, the lawyer who has defended dozens of students accused of sexual misconduct. He has also advised about six students undergoing University-Wide Committee proceedings in the last three years, he said, and beyond his role in referring John Doe to Susan Kaplan, is not currently involved in any of the three lawsuits.

"Anyone who gets expelled or suspended feels there's something wrong with the result. But with the proviso that it's still a long way from being perfect, I think Yale has become more patient with the investigations," Miltenberg said, citing the University-Wide Committee's five-person panel and use of an independent fact-finder.

As conversations about sexual assault on college campuses reach broader audiences, universities have found themselves under increasing pressure to deliver guilty verdicts, Miltenberg argued. This results in a high frequency of cases in which universities find students responsible for sexual misconduct yet hand down light sanctions, such as one- or two-semester suspensions — an approach he described as "risk management."

At Yale, five of the 19 undergraduates found guilty of sexual assault after undergoing the University-Wide Committee's formal complaint process in the last four years were expelled, according to the semi-annual reports released by the Title IX office. The rest received punishments ranging from written reprimands to one- to three-semester suspensions.

Presented with these figures, Yale spokesman Tom Conroy said the University defines sexual assault as "any kind of nonconsensual sexual contact, including rape, groping and any other nonconsensual sexual touching." When recommending a penalty, Conroy said the University-Wide Committee panels will take into account many factors, including the nature of the act and previous discipline the respondent has received.

But as long as universities face competing pressures, their efforts to fairly and equitably adjudicate allegations of misconduct will be challenged.

"Every school could benefit from more diligent, expansive, deliberate procedures and more trained or better-trained investigators and hearing panel members," Miltenberg said. "Yale can as well. But as long as this continues to be such a polarizing issue ... you can't discount the political pressures a university is under to deal with these cases in a way that minimizes their risk."

It's only fair to share...  (http://www.facebook.com/sharer.php?u=http://features.yaledailynews.com/blog/2017/10/13/yale-targeted-in-federal-title-ix-investigation/)

 (http://reddit.com/submit?url=http://features.yaledailynews.com/blog/2017/10/13/yale-targeted-in-federal-title-ix-investigation/&title=Yale_targeted_in_federal_Title_IX_investigation) 

© 2014 Yale Daily News

About Us (http://yaledailynews.com/about-us/)
Advertise (http://yaledailynews.com/business/)

Subscribe (http://subscribe.yaledailynews.com/)

d Eagle    Valley Independent Sentinel    La Voz

# NEW HAVEN INDEPENDENT

## Title IX Probe Targets Yale

by **MAYA SWEEDLER & FINNEGAN SCHICK/YDN** | Oct 15, 2017 3:23 pm
(3) **Comments** | **Commenting has been closed** | **E-mail the Author**
Posted to: **Higher Ed, Legal Writes**

Yale was under federal investigation from April to September of this year after an alumnus filed a complaint with the federal Department of Education's Office for Civil Rights alleging that the university discriminated against him in its Title IX procedures because he was a man.

The case alleges that the student, an anonymous member of the Yale College class of 2015 referred to as "John Doe," first experienced discrimination when a teaching assistant for an introductory philosophy course reported him to Yale's Title IX office in fall 2013 after he submitted an essay that included a discussion of the impulses that might drive someone to commit rape. After the incident, Yale prohibited Doe from contacting the TA and directed him to attend sensitivity training at Yale Mental Health & Counseling.

Documents provided to the Yale Daily News — including redacted correspondences provided by the plaintiff and court filings — reveal that Doe came before the Title IX office on two subsequent occasions: first in spring 2014 and again in fall 2014 after two female students accused him of sexual assault. Following these allegations, Yale placed Doe on probation for the remainder of his Yale career and banned contact between him and the two female students.

After graduating in May 2015, Doe filed complaints both in federal district court and with the regional OCR branch in Boston alleging that Yale had violated his Title IX rights. Title IX, a clause in the U.S. Education Amendments of 1972, protects people in schools that receive federal funding from discrimination on the basis of their sex.

Click here to read the full article.

Share this story with others.

+ More    f Facebook    y Twitter    G+ Google+    in LinkedIn    ✉ Email    🖨 Print



Recommend  Sign Up to see what your friends recommend.